**Linda Sue ARCHIBEQUE,**
**Plaintiff–Appellant,**

v.

**ATCHISON, TOPEKA AND SANTA**
**FE RAILWAY COMPANY,**
**Defendant–Appellee.**

No. 94–2215.

United States Court of Appeals,
Tenth Circuit.

Nov. 24, 1995.

Michael B. Michelson, of Gaines & Stern Co., L.P.A., Cleveland, Ohio (Michael J. Rogan, of Gaines & Stern Co., L.P.A., Cleveland, Ohio, and Mark Riley, of Padilla, Riley & Shane P.A., Albuquerque, New Mexico, with him on the briefs), for Plaintiff-Appellant.

John S. Thal (J.H. Mahaney, with him on the brief), of Atkinson & Thal, P.C., Albuquerque, New Mexico, for Defendant-Appellee.

Before KELLY and SETH, Circuit Judges, and BROWN, District Judge [*].

SETH, Circuit Judge.

Appellant Linda Sue Archibeque appeals the dismissal with prejudice of her complaint against the Atchison, Topeka & Santa Fe Railway Company (AT & SF). The dismissal was based on the district court's determination that Appellant willfully provided false and misleading answers on a continual basis during the discovery process. *See* Fed. R.Civ.P. 37(d).

Appellant brought her complaint under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, seeking damages for personal injuries allegedly sustained while working for AT & SF. Specifically, she maintains that she suffered a herniated disk in her lower back as a result of a December 29, 1990 unwitnessed work-related accident.

In its answer to Appellant's complaint, AT & SF asserts that the injury predated December 1990, or that it was a result of an accident suffered subsequent to the alleged December 1990 mishap. Because Appellant had suffered other injuries, including automobile accidents in July 1990 and July 1992, AT & SF requested a complete set of medical records by which its experts could evaluate Appellant's claim and plan a defense. AT & SF also raised the question as to the number of accidents in which Appellant had been involved. This was on October 8, 1993 during a conference before the magistrate judge.

In response to AT & SF's request for complete medical records and a complete list of health care providers that had treated Appellant in the past, Appellant listed a variety of providers and a corresponding list of the medical conditions. In her responses, there was no mention of any lower back or tailbone symptoms in existence prior to December 1990. In fact, when asked what other serious physical injuries she had experienced since 1975, Appellant listed the alleged December 1990 accident, the car accidents mentioned above, and a bicycle accident in 1987. There was no reference to lower back or tailbone injuries prior to 1990. Appellant signed a sworn verification as to the truth of her answers, and signed a statement that the medical records provided were complete. In addition, Appellant stated that she had not had her lower back X-rayed prior to the December 1990 injury. Finally, Appellant stated in her deposition that she had no recollection of lower back pain prior to the December 1990 accident.

Subsequent to the responses and deposition testimony provided by Appellant, AT & SF sought to independently confirm the veracity of the responses. Through this effort, AT & SF was able to determine that for over ten years prior to the alleged December 1990 accident Appellant had sought and received medical treatment for lower back and tailbone pain. Specifically, the documents uncovered by AT & SF indicate that on over fifteen occasions, involving at least six physicians, Appellant sought treatment for a variety of lower back ailments and related symptoms.

[*] The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, *sitting by designation.*

The records uncovered by AT & SF indicate that from 1980 to 1984, Appellant complained to Dr. Farid Sada of constant pain in the lower back area, "numbness & tingling [in the] right hip," and pain in the left hip and tailbone leaving her hardly able to sit. Aplt.App. at 63–64. On April 24, 1984 X-rays were taken of Appellant's hips and lower back.

In 1984 Appellant also visited Lovelace Medical Center on several occasions complaining of constant pain in her tailbone that would shoot into her thigh and into her buttocks. More X-rays were taken and she saw several physicians within Lovelace's orthopedic department. *Id.* at 66–71. In a 1986 visit to Caremore Chiropractic Center Appellant indicated that she had experienced lower back pain for five or six years prior to the visit. *Id.* at 74. In 1989, Appellant again indicated in her medical claim to a separate physician a history of lower back and tailbone pain. Indeed, Appellant sought medical treatment for lower back pain through July of 1990. *Id.* at 84–86.

Following its discoveries, AT & SF brought its Motion to Dismiss pursuant to Fed.R.Civ.P. 37(d), asserting that Appellant attempted to conceal her medical history, repeatedly perjured herself, and thus failed to cooperate in the discovery process. Appellant's attorney filed a brief in opposition to the motion, stating that her problems were with her tailbone rather than her lower back and that her failure to disclose her past medical history was merely oversight. She did not file amended interrogatory responses or an affidavit regarding her compliance with the discovery process. She has at no time, even in her arguments to this court on appeal, explained her conduct. Instead, she concludes in her brief to this court that she "fully cooperated in the discovery process."

The district court granted AT & SF's motion, finding that Appellant's failure "to disclose her numerous complaints and treatments involving her lower back and tailbone ... [could not] reasonably be classified as 'mere oversight.'" The court further found that Appellant's actions "irreparably prejudiced [AT & SF] in the preparation of its defense." Finally, the court noted that Appellant's conduct "seriously interfered with the judicial process."

The imposition of the sanction of dismissal is reviewed under an abuse of discretion standard. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747; *Mobley v. McCormick,* 40 F.3d 337 (10th Cir.). Our case law makes it clear that a district judge may dismiss an action for discovery violations. *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir.). *See also* Fed.R.Civ.P. 37(b)(2)(C) (authorizing a court to enter an order dismissing the action if a party "fails to obey an order to provide or permit discovery"). Because of the harshness of dismissal, however, due process requires that the discovery violation be predicated upon "willfulness, bad faith, or [some] fault of petitioner" rather than inability to comply. *National Hockey League,* 427 U.S. at 640, 96 S.Ct. at 2779 (quoting *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255). *See also Toma v. City of Weatherford,* 846 F.2d 58 (10th Cir.) (willfulness not shown by delay in answering interrogatories where defense counsel knew that plaintiff had moved from the jurisdiction and discovery would take longer than initially anticipated). This circuit has provided a framework of factors that should ordinarily be considered by a trial court prior to dismissal. *See Mobley,* 40 F.3d at 340; *Ehrenhaus,* 965 F.2d at 921. We have, however, recognized that these factors are not a "rigid test," and that determining the correct sanction is a fact specific inquiry that the district court is in the best position to make. *Ehrenhaus,* 965 F.2d at 920–21.

The factors mentioned above relevant to this inquiry include "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (citations omitted). These factors are ordinarily evaluated on the record. *Id.*

The district court in the instant case noted the degree of prejudice suffered by AT & SF and the impact Appellant's actions had with regard to AT & SF's ability to prepare for trial. The court noted the culpability of Appellant which we described above, specifically addressing the failure to disclose, the false statements, and the court's determination as to the credibility of Appellant's statements that her failures were mere oversight. The court found that Appellant's willful conduct seriously interfered with the judicial process, and expressly stated that it had considered lesser sanctions and determined that they were not appropriate.

We conclude that the district court's order of dismissal did not constitute an abuse of discretion under the circumstances of this case. The fact that Appellant was not warned of the imminent dismissal, or that the court did not evaluate the above factors on the record does not undermine the court's consideration of the remaining factors discussed above. As the *Ehrenhaus* court noted, "[a] district court should ordinarily consider and address all of the above factors before imposing dismissal as a sanction. However, often some of these factors will take on more importance that others." *Id.* at 922. Here, the egregious nature of Appellant's conduct, the effect on AT & SF and the interference with the judicial process properly led to the dismissal. The court made clear the reasons for its dismissal of the action in its Order, and its decision is fully supported by the record. We cannot find that the district court abused its discretion.

Based on the foregoing, we AFFIRM the dismissal of Appellant's claim.